SHIPMAN, Circuit Judge.
The complaint alleged that the accident solely resulted from the defendant’s negligence in using a boiler that was, to its knowledge, defective and out of repair, and that the explosion occurred by reason of this defective condition. The answer, in addition to a general denial, alleged also, as defenses, that the accident was caused by the contributory negligence of the plaintiff, and by the negligence of one of his fellow servants.
*471 The facts, as narrated by the plaintiff on the trial, are, in outline, as follows:
“On the day of the accident, plaintiff, who had been in the company’s employ at Lost Creek for several years, working part of the time in the breaker, and part of the time in the boiler house, was assigned to work at the boiler house, to assist John Miller. Miller was fireman in charge, in the absence of James Egan, the head fireman, who was unwell that day. There were seven sets of boilers in this boiler house, three boilers to each set, making twenty-one boilers in all. The boilers rested at one end on a wall, and were hung at the other end on girders. When Kiszel began work, about 2 o’clock p. m. on the day of the accident, the fires were already lighted under eighteen boilers. The other three were cold, having been out of use for a week for repairs to the flues and surrounding masonry. A fire was put under these three boilers between 5 and 6 o’clock p. m., while he was at his supper.”
About 7 o’clock lie» was told by Miller to watch these three boilers, and found that the water in the first boiler just caught the middle. gauge, and was higher than that gauge in the second and third boilers. The first boiler was the one that exploded. At a quarter past 8, when he was looking under it, he saw that the water was “dropping down in the middle from the boiler.” Miller was there at the time, and also looked at the boiler, and said, “Most of those boilers leaked.” About five minutes before 9 o’clock, Miller, Shields, who was hoisting engineer, and Lanbach, who was the pump-man, came to look at the boiler. Kiszel also looked in, and saw that it was leaking badly. It exploded at 9 o’clock, and Miller, Shields, and Laubach were killed. Nothing had been done to extinguish the fire or blow off steam or disconnect this set of boilers from the rest. The boiler in question was a plain cylinder boiler, made at the Hazel-ton shops. The Hazelton boilers are considered about the best make of boilers used in that region. It was regularly inspected every six months. The last inspection had been made on March 2, 1894, between four and five months before the accident. At that time the inspector went into the boiler with a lamp and his tools, and examined the boiler and the rivets, and reported the boiler good. It had been in active use and working well up to the time the fires were drawn for repairs to the masonry, about a week before the accident.
The defendant moved, at the close of the testimony, for the direction of a verdict in its favor, because no negligence or want of care on its part had been established, whereas the plaintiff had been guilty of contributory negligence, and because the negligence, if any, was that of Miller, a co-employó with the plaintiff. The denial of this motion is the subject of one or more of the assignments of error. The adequate difficulty which prevented the direction of a verdict was the state of the evidence upon the questions of fact. Kiszel was the only survivor who knew anything of the occurrences during the afternoon and evening before the explosion, and the inferences which could fairly be drawn from his testimony on the trial were against the safety of the boiler, and were not in favor of the negligence of Miller, who was admitted by his employers to have been a competent fireman. Kiszel, shortly after his injury, when he was in the hospital, had given a history of the accident, and had also testified before the coroner, and his statements on both those occasions bore with severity *472 upon the carelessness of Miller, but upon the trial the drift of his testimony was quite different. The prominent fact which he then sought to have inferred was the defective character of the boiler. He said that it was originally half an inch thick, and that on the bottom, where the break occurred, it had worn down to an eighth of an inch, and that the bottom was worn out. The other testimony adverse to its safety, and which called upon the defendant for the exercise of care in its examination, and in the maintenance of its soundness, was in regard to the usual duration of the life of a boiler, and upon this point the defendant’s witnesses alone testified. One said, “I have known some of them [the Hazelton boilers] to last eighteen or twenty years.” Another said that they lasted from 20 to 22 years. Another said, “I have known them to last twenty years.” The exploded boiler was 18 years old. The opinion of the defendant’s experts who subsequently investigated the subject was that the crack and the resulting explosion were due to the unequal expansion of the bottom and the top of the boiler, caused by too sudden and hot a fire when the boiler was cold and the masonry was still damp, and there was not enough water in the boiler. Upon this state of the evidence, especially in regard to the time when a boiler must be expected to wear out, the question of an unsoundness which ought to have been ascertained by the defendant’s agents or representatives could not be taken from the jury. But it is said that the defendant had discharged its duty by the purchase of a boiler of the best material, from manufacturers of the best reputation, by semiannual careful inspection of it, and by -its previous freedom from indications of leaks, for the defendant is not a warrantor of the absolute safety of.its machinery, and is not liable for the consequences of unknown defects which reasonable and accurate investigation, made at the time when due care requires that such investigation should be made, failed to discover. That statement of the law is not objectionable, but the question of a defendant’s liability for the defects of old machinery turns upon the continued exercise of due care, for its duty to its employés is only discharged when “its agents whose business it is to supply such instrumentalities exercise due care, as well in their purchase originally as in keeping and maintaining them in such condition as to be reasonably and adequately safe for use by employés.” Hough v. Bailway Co., 100 U. S. 213. It was a question of moment in this case whether, if this boiler was defective, its condition, after 18 years of use, ought not to have been previously ascertained by the defendant. The difficulty which prevented the trial judge from taking the question of the defective condition of the boiler from the jury was also apparent in regard to the negligence of Miller. As the plaintiff presented Miller’s conduct to the jury, he was apparently thoughtful, and not inattentive, but his conduct was heedless and willful, if the declaration of Kiszel before the coroner and in the hospital, and the inferences directly deducible from his story, were true. The question was one of the credibility to be given to the plaintiff as he appeared upon the stand, and the jury decided in his favor.
The defendant made divers requests to charge in regard to the *473 necessity that its negligence should be affirmatively shown, in regard to the infirmity of the plaintiff’s case if the accident was due to Miller’s negligence, and in regard to the extent of the obligation upon the defendant to furnish safe machinery. The various propositions upon these subjects, although they were technically correct, the trial judge did not charge in the form in which they were presented, but directed the attention of the jury in a less abstract way to the particular questions before them. He told the jury to return a verdict for the defendant if the boiler was a fairly safe one to be put at the work which it was called upon to do, but that if it was defective, and the persons in charge of the boilers knew it, then the plaintiff had made out his part of the case. The judge dwelt upon the importance of ascertaining whether the boiler was defective, by further charging that if it was a bad one, and was so understood by those in charge of it, and the defect injured the plaintiff, the fact that Miller was careless did not affect the case, because his negligence could not relieve the defendant’s negligence. It is true that he did not charge in terms upon the question of their duty if they found the boiler to be sound, and that the accident occurred through Miller’s negligence, because he had told them that, if the boiler was a fairly good one, to return a verdict for the defendant. Upon the subject of the plaintiff’s conduct, the judge told the jury that if he, by his own carelessness, brought in any degree the injury upon himself, then he was not entitled to recover, and that if the injury was the result of the plaintiff’s own fault, in whole or in part, to return a verdict for the defendant. The defendant requested the court to charge specifically that if the plaintiff discovered, before the accident, that the boiler was in an unsafe condition, and likely to explode unless the fire was withdrawn or the pressure reduced, it was contributory negligence to remain in the vicinity without making efforts to draw the fire and reduce the pressure. The trial judge did not make contributory negligence to depend entirely upon the fact of his remaining in attendance, and an absence of manual attempts to draw the fire, but he directed the attention of the jury to other facts in the case, an important one being that Kiszel was a mere subordinate, that Miller was in charge, and that the plaintiff was the one to obey, and not to dictate. It appears from the testimony that he was a common laborer, with some previous knowledge of a boiler and its appliances, and knew how to make, regulate, and check a fire, to watch the gauges, and to note the pressure of the steam. If his testimony upon the trial was worthy of credit, he had no occasion for alarm until about five minutes before 9, just before the explosion, when the three men, of apparent experience in steam boilers, came together to examine the leakage. If his statement in the hospital, and before the coroner, are to be relied upon, in whole or in part, he was in frequent controversy with Miller during the evening, in which he was expressing his apprehensions of danger, was remonstrating against Miller’s course, and was steadily overruled. An instruction to the jury that, if he knew of the danger, it was contributory negligence to remain in the vicinity without making efforts to draw the fire or reduce the pressure, *474 would have been an instruction not pertinent to the facts, because, in connection with his assertions that he knew the danger, it was made manifest that he was unable to draw the fires or reduce the pressure against the will of Miller, who was, if the plaintiff’s story immediately after the explosion was of material value, in actual oversight of the three boilers during the evening. Our study of the record leads to the conclusion that, if any mistakes were made upon the trial, they were not those of law, but were of fact, of which the jury were the judges. The judgment of the circuit court is affirmed, with costs.